UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X       For Online Publication Only

PRECISION WELLNESS LLC.,

                                                          Plaintiff,        21-CV-01244 (JMA) (ARL)

   -against-

DEMETECH CORPORATION,

                                                          Defendant.

------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

      Before the Court is Defendant Demetech Corporation's ("Demetech" or "Defendant"), motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). (Def.'s Motion to Dismiss, ("Def's Mot.") ECF No. 21.)  For the reasons stated herein, Demetech's motion is GRANTED.

## I. BACKGROUND

The following facts, set forth in the Complaint and the attached exhibits, are presumed true for purposes of Defendant's motion to dismiss.

      Plaintiff is a New York-based company with its principal place of business in Nassau County. (Complaint ("Compl.") ECF No. 1.) Precision provides health care technology and hardware services. (Compl. ¶ 7.; (Declaration of Tash Qayyum ("Qayyum Decl.") ¶ 6 ECF No. 22-1.)

1

Demetech Corporation ("Demetech") is a Florida-based corporation with its principal place of business in Miami-Dade County, Florida. (Compl. ¶ 6.) Demetech manufactures and distributes medical supplies. (Compl. ¶ 9.) Demetech maintains an interactive website and "Amazon.com storefront" through which it sells to consumers nationwide. (Qayyum Decl. ¶¶ 23, 27.) Demetech has at least three New York distributors of its products – Hygitech, Noble Dental Supplies, and Cargus International Inc. (Ex. I. to Qayyum Decl.)

On October 23, 2020, Precision's Chief Executive Officer, Tash Qayyum ("Qayyum"), emailed Demetech to inquire about purchasing a large order of surgical masks. (Compl. ¶ 11.) Demetech's Vice President, Luis Arguello Jr. ("Arguello") responded to Qayyum, and continued these discussions about Demetech's ability to fulfill large purchase orders. (Compl. ¶ 12.) The parties then held an in-person meeting at Demetech's Florida office. (Compl. ¶ 13.) At some point, Qayyum mentioned his business relationships with companies, including Honeywell, and their interest in purchasing large orders of PPE. (Compl. ¶¶ 12-13.)

Following the meeting in Florida at Demetech's office, Qayyum emailed Arguello that he was "making calls as [a] Demetech Distributor" and understood Arguello was drafting a distributor agreement between the two companies. (Compl. ¶¶ 13-14.)

On October 26, 2020, Arguello emailed Qayyum with the subject line "Honeywell" and stated, "[a]s discussed, for Honeywell, we can pay 10% commission for pricing above .25, and 5% for pricing below .25 per surgical mask. We can formalize into an agreement once we see viability of the project." (Ex. A. to Qayyum Decl.)

On November 2, 2020, the parties memorialized their sales commission agreement (the "Agreement"). (Compl. ¶ 18; Ex. B to Qayyum Decl.) The Agreement bears the Demetech corporate seal and was signed by Arguello on November 2, 2020. (Id.)

2

The Agreement set forth the following: Demetech would pay Precision a 5% commission of the products' sales price for all sales generated by Precision's contacts, which include Honeywell. (Compl. ¶ 18; Qayyum Decl. Ex. B.) Precision acted as Demetech's commission agent from New York at all times. (Qayyum Decl. ¶ 23).

Qayyum states it relied on the Agreement and contacted certain employees at Honeywell to meet with Demetech and then formally introduced Demetech to the Honeywell employees. (Compl. ¶ 21.) The work to connect Demetech with Honeywell contacts took place in New York. (Qayyum Decl. ¶ 16.)

On November 3, 2020, Honeywell placed at least one order for masks from Demetech for $2.1 million. (Qayyum Decl. ¶ 17.) On November 5, 2020, Honeywell placed another order with Demetech for masks totaling another $4.2 million. (Qayyum Decl. ¶ 18.) After Honeywell placed the November 3, 2020 and November 5, 2020 orders with Demetech, Arguello ceased all communications with Qayyum. (Compl. ¶ 24.) Precision alleges that they are due a 5% commission on these sales, and all other sales to Honeywell, in an amount totaling at least $315,000.00. (Compl. ¶ 26; Qayyum Decl. ¶ 20.)

On March 9, 2021, Precision commenced this instant action. (See Compl.) In response, Demetech filed a motion to dismiss for lack of jurisdiction and improper venue, and in the alternative, transfer venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1391(b). (ECF No. 21 at 6.)

On June 11, 2021, Plaintiff served its opposition. (Pl.'s Opp., ECF No. 22.) Defendant served its reply and filed the fully briefed motion on July 16, 2021. (Def's Reply, ECF No. 23), further arguing that Demetech engaged in no purposeful activity with the forum state and that transfer to the Southern District of Florida was warranted under U.S.C § 1631. (Def's Reply at

3

11.) For the reasons set forth below, the Court is Defendant's motion to dismiss is denied in part and granted in part.

## II. DISCUSSION

### A. Legal Standard

Motions to dismiss for lack of personal jurisdiction and improper venue are evaluated using the same legal standard. Williams v. Preeminent Protective Servs., Inc., 81 F. Supp. 3d 265, 269 (E.D.N.Y. 2015) (citing Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005)). In each case, the burden rests with the plaintiff to demonstrate that venue and jurisdiction are proper. Id. (citing CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364–65 (2d Cir. 1986)); see also Metro. Life Ins. Co. v. Robertson–Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)).

"The showing a plaintiff must make to meet [this] burden is governed by a sliding scale, which varies depending on the procedural posture of the litigation." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (quoting Ball v. Metallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)). At the pre-discovery stage, a plaintiff need only make a prima facie showing of jurisdiction through its own affidavits and supporting materials to defeat the motion. Metro. Life Ins. Co. (quoting Welinsky v. Resort of the World D.N.V., 839 F.2d 928, 930 (2d Cir. 1988)); see also Williams, at 269 ("plaintiffs satisfy [their] burden by pleading facts sufficient to demonstrate a prima facie showing of jurisdiction or venue by way of the complaint's allegations, affidavits, and other supporting evidence, which are evaluated in the light most favorable to them."); Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998)("A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place.")

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may

4

look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials. MTS Logistics, Inc. v. Innovative Commodities Grp., LLC, 442 F. Supp. 3d 738, 742 (S.D.N.Y. 2020) (citing MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012)). The allegations in the complaint are presumed true only to the extent they are uncontroverted by the defendant's affidavits." Id. (citing MacDermid, 702 F.3d at 727)(citation omitted).

**B. Personal Jurisdiction**

Courts in this District apply New York law to determine whether if there is personal jurisdiction over a defendant. Spiegel v. Schulmann, 604 F.3d 72, 76 (2d Cir.2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located.") This two-part inquiry asks whether New York state law would allow the Court to exercise personal jurisdiction over the defendant and whether exercising that jurisdiction would be permissible under the Due Process Clause of the Fourteenth Amendment. Williams, at 270 (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir.2002)).

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)).

Precision points to two provisions of the New York long arm statute that it says subjects Demetech to jurisdiction here. First, Precision claims that Demetech is subject to general personal jurisdiction. See N.Y. C.P.L.R. § 301. Second, Precision claims that Demetech has "transacted business" in New York, which subjects it to personal jurisdiction for claims related to that business. See N.Y. C.P.L.R. § 302(a)(1). Neither of Precision's arguments are availing.

5

### 1. **General Jurisdiction under C.P.L.R. § 301**

New York's C.P.L.R. § 301 ("Section 301") allows courts to invoke that jurisdiction where corporations have engaged in "such a continuous and systematic course of 'doing business'" [in the state] that a finding of [their] 'presence' [there] is warranted." See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33 (1990).

The Supreme Court, however, has cautioned that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in "exceptional" cases, and exerting it over foreign corporations merely because they or their subsidiaries conduct regular business in a state may violate the Due Process Clause. Sonera Holding B.V. v. Çukurova Holding A.S., 750 F.3d 221, 222 (2d Cir. 2014) (per curiam) (citing Daimler AG v. Bauman, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014)).

Here, the Court may quickly dispose of this issue because the record reveals no evidence or support for general jurisdiction. Plaintiff appears to concede as much by relying on "limited internet searching" and requesting jurisdictional discovery.[1] (Pl's Opp. at 21, 23.) Plaintiff's statements are conclusory and thus insufficient. Grp. One Ltd. v. GTE GmbH, No. 20-CV-2205, 2021 WL 1727611 (E.D.N.Y. Feb. 3, 2021); Kaufhold v. Cyclopian Music, Inc., No. 10-CV-4588, 2010 WL 5094630, at *3 (S.D.N.Y. Dec. 14, 2010) (finding no general personal jurisdiction where "the plaintiffs have not alleged that the defendants maintain an office, solicit business, keep bank accounts, own property, or have employees or agents in New York.")

In support, Precision cites to a case applying Connecticut's long-arm statute. However, New York law applies here. In any case, Precision has made no showing of "exceptional" contacts

---

[1] To the extent Plaintiff's motion can be construed as formally requesting jurisdictional discovery, the Court declines. Plaintiff's allegations are "too conclusory, nonspecific, or otherwise inadequate" to merit jurisdiction-related discovery. See Sullivan v. Walker Constr., Inc., No. 18-CV-09870, 2019 WL 2008882, at *3 (S.D.N.Y. May 7, 2019).

that would render Demetech "at home" in New York. As such, this Court lacks general jurisdiction over Demetech under Section 301. The Court also declines to exercise its discretion in requiring jurisdictional discovery which it finds unwarranted.

### 2. Specific Jurisdiction under C.P.L.R. § 302(a)(1)

Under Section 302(a)(1), specific jurisdiction exists when a defendant "transacts business within the state" and the claim "arises out of defendant's business activity in the state." Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 103 (2d Cir. 2006). Transacting business must consist of purposeful commercial activity. Chloe v. Queen Bee of Beverly Hills, L.L.C., 616 F.3d 158, 170 (2d Cir. 2010). Purposeful activities "are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007).

The New York Court of Appeals has instructed that not every "transaction," however, will give rise to jurisdiction under Section 302(a)(1). DH Servs., LLC v. Positive Impact, Inc., No. 12-CV-6153, 2014 WL 496875, at *3 (S.D.N.Y. Feb. 5, 2014) (citing SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n, 18 N.Y.3d 400, 404 (2012).

Specifically, the plaintiff must also establish "some articulable nexus between the business transacted and the cause of action sued upon." Id. A court must consider "the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." Grand River Enterprises Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005). Ultimately, "it is the quality of the defendant['s] New York contacts that is the primary consideration" when determining whether jurisdiction is appropriate under Section 302(a)(1).

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 62 (2d Cir. 2012) ("nature and quality, and not the amount of New York contacts [which] must be considered by the court.").

Here the Court finds Plaintiff has not established a prima facie showing of a specific personal jurisdiction. The Court finds no "single act" sufficient to confer jurisdiction, nor that the "totality of all defendant's contacts" establish an "ongoing course of conduct or relationship in the state" such that the Court may exercise jurisdiction over it.

### a. The Agreement does not confer specific jurisdiction

Plaintiff contends the Agreement constitutes a purposeful transaction on the basis that all of Precision's communications were from New York and the contract was to be performed from New York. (Pl's Opp. at 24.) Put another way, Precision implies that its status as a New York-based company weighs in favor of finding jurisdiction. However, "multiple district courts in this Circuit have held ... that the mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business under § 302(a)(1) of the CPLR." MTS Logistics, Inc. v. Innovative Commodities Grp., LLC, 442 F. Supp. 3d 738, 742 (S.D.N.Y. 2020) (internal citations and quotations omitted)

Precision's argument is also undermined by the parties' accompanying submissions. On a 12(b)(1) motion, allegations in the complaint are presumed true only to the extent they are uncontroverted by the defendant's sworn statements. (Id.) The Complaint readily concedes that the Agreement was executed in Florida and the sole in-person meeting alleged took place at Demetech's offices in Florida. (Pl's Opp. at 24; Compl. ¶ 12.) Defendant's sworn declaration attests that Demetech has "no employees, directors, or officers in New York" and "does not make sales visits to New York." (ECF No. 21-1 at 2-3). Demetech also has "no distribution agreements

with any New York companies" and "does not advertise or sell products directly in New York." (Id.)

While the Court agrees with Precision that Demetech's lack of physical presence in New York is irrelevant to determine whether it transacts business within the state, Precision still fails to sufficiently allege that Demetech has New York contacts that are purposeful. Chloe, 616 F.3d at 169. Indeed, Precision does not allege that Demetech sought a unique benefit when it transacted business in New York nor that the alleged communications pertaining to the Agreement evince an intent to "invoke the protections of New York law." DH Servs., at *5 (S.D.N.Y. Feb. 5, 2014).

Moreover, as other courts have held, a plaintiff cannot make a prima facie showing of specific personal jurisdiction if the claims do not arise from a defendant's contacts with New York. Kaufhold v. Cyclopian Music, Inc., No. 10-CV-4588, 2010 WL 5094630, at *4 (S.D.N.Y. Dec. 14, 2010) (citing Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103–04 (2d Cir. 2006)). Here Plaintiff's causes of action which arise from Demetech's alleged breach of the agreement relate to only to purchase orders from Honeywell, a company located in North Carolina. (ECF No. 21 at 8.) While these specific factors are not entirely dispositive, they are relevant considerations for finding if an out-of-state defendant "transacts business in New York." Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (listing relevant factors including: "(i)whether the defendant has an on-going contractual relationship with a New York corporation, (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship […]").

Plaintiff simply fails to show any suit-related conduct by Demetech that creates "a substantial connection with the forum State." Walden v. Fiore, 571 U.S. 277, 284, 134 S.Ct. 1115,

9

188 L.Ed.2d 12 (2014). Precision essentially only refers to itself, to confer jurisdiction, but this substantial connection must be created by the actions of the defendant seeking to avoid the assertion of jurisdiction – meaning, in this case, the requisite connections must have been created by Demetech, rather than by Precision. See Walden, 571 U.S. at 284, 134 S.Ct. 1115 (quotations omitted). In short, Precision "cannot be the only link between the defendant and the forum." Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc., 331 F. Supp. 3d 130, 142 (S.D.N.Y. 2018).

The cases discussing commission agreements which Precision relies on are more accurately viewed in their proper context as employer-employee disputes. For example, in Williams, the plaintiff was a remote worker who participated in weekly conference calls, reported directly to the defendant-employer, and "coordinat[ed] communications between [Defendant's] central office and hundreds of its field employees." The court there found that plaintiff had completed a "large amount of substantive work" within the District. Williams, at 271 (E.D.N.Y. 2015)(finding prima facie where "defendants had a significant continuing relationship with [plaintiff] over the months [] worked for them.")

Accordingly, Precision's allegations without more, are "general assertions" which are "legally conclusory and thus insufficient" to confer jurisdiction. Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC, No. 20-CV-7351, 2021 WL 3423253, at *3 (S.D.N.Y. Aug. 5, 2021)(finding no personal jurisdiction where); see also S. New England Tel. Co. v. Global NAPS Inc., 624 F.3d 123, 138 (2d Cir. 2010)(conclusory allegations will not suffice to meet this burden; plaintiff must make a "specific averment" of facts that are "sufficiently supported.")

### b. The totality of Demetech's conduct does not confer jurisdiction

For similar reasons, even considering the "totality of Demetech's conduct," namely, Precision's reliance on Demetech's "Amazon.com storefront," the Court does not find jurisdiction proper. (Pl's Opp. at 25-27.) Plaintiff points to Demetech's "Amazon.com storefront" and it "likely" having an eBay website, along with a few purported New York suppliers. (Pl's Opp. at 25-27.) But Demetech's business in New York in no away arises out of its relationship with Precision.

Plaintiff relies heavily on and misconstrues the Second Circuit's decision in Chloe, 616 F.3d 158 (finding defendants in trademark infringement action transacted business by shipping counterfeit bag to New York and operating an interactive website offering bags for sale to New York customers). Chloe, however, is inapposite. The transaction, there, that conferred personal jurisdiction under Section 302(a)(1) was the very conduct underlying the lawsuit: defendant's sale of counterfeit bags through interactive website. Additionally, the Court found "fifty-two separate transactions in which merchandise was shipped into New York." See, also, Alcon Lab'ys, Inc. v. Allied Vision Grp., Inc., No. 18-CV-02486, 2018 WL 10550777, at *2 (E.D.N.Y. Dec. 22, 2018) (finding personal jurisdiction where defendants "regularly imported" products into New York, placed products with New York vendors, advertised with New-York based publishers, attended related conferences in New York, and ship products to New York through website.)

Courts have distinguished between an "intent to serve the U.S. market" and "conduct purposefully directed at [a particular state]" Guglielmo v. JEGS Auto., Inc., No. 20-CV-5376, 2021 WL 1026168, at *4 (S.D.N.Y. Mar. 17, 2021) (citing J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 886 (2011)).

Precision's Complaint concerns alleged unpaid sums in connection with purchase orders to a North Carolina-based company. The Complaint does not allege that Demetech purposefully

11

directed itself at New York or sought to grow New York-based contacts. While Demetech was aware of Precision's New York location, th Second Circuit has held that "mere knowledge that a plaintiff resides in a specific jurisdiction would be insufficient to subject a defendant to specific jurisdiction in that jurisdiction if the defendant does nothing in connection with the tort in that jurisdiction." Waldman v. Palestine Liberation Org., 835 F.3d 317, 338 (2d Cir. 2016).

Indeed Precision's New York location appears largely incidental to the Agreement, and Precision does not argue otherwise. See Callahan v. Wisdom, No. 19-CV-00350, 2020 WL 2061882, at *7 (D. Conn. Apr. 29, 2020) ("the fact that [plaintiff] was located in Connecticut appears to have had no bearing on, or relationship to, the stated purpose of the arrangement— expanding the Company's global business. [plaintiff's location was purely incidental")

Accordingly, the Court finds that it lacks personal jurisdiction over Defendant and therefore, the Court may decline to address whether the exercise of personal jurisdiction comports with constitutional due process requirements. See Grp. One Ltd. v. GTE GmbH, No. 20-CV-2205, 2021 WL 1727611 (E.D.N.Y. Feb. 3, 2021) (citing McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani, 295 F. Supp. 3d 404, 411 (S.D.N.Y. 2017)).

**C. Improper Venue and Motion to Transfer**

"Because the Court has determined that it lacks both general and specific personal jurisdiction over Defendant, venue is not proper pursuant to 28 U.S.C. § 1391(b)(1)." Bartosiewicz v. Nelsen, No. 20-CV-06513, 2021 WL 4451445, at *8 (W.D.N.Y. Sept. 29, 2021) (citing Powell v. Monarch Recovery Mgmt., 15-CV-2162, 2016 WL 8711210, at *7 (E.D.N.Y. Jan. 22, 2016). Venue is further improper because, as discussed above, a substantial part of the events or omissions giving rise to Plaintiff's claims did not occur here. Id. (quotations omitted). The Second Circuit has cautioned district courts to take seriously the adjective "substantial," explaining that venue is

proper only if significant events or omissions material to the plaintiff's claim' occurred in the chosen district. Id. (internal citations and quotations omitted).

"After [a] determination that the Court lacks personal jurisdiction over Defendant, the Court looks to 28 U.S.C. § 1406(a), which provides that [t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Id. (internal quotations omitted). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." Id. (citing Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005)). Among the factors considered are "(1) the convenience of parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof and the locus of operative facts; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the action can be tried more expeditiously and inexpensively (e.g., calendar congestion); and (7) the totality of circumstances." Id. (internal citations omitted).  Additionally, even "the mere appearance of a colorable jurisdictional issue may be a factor in a court's decision to transfer venue." Pro Sight - Syndicate 1110 at Lloyd's v. Am. Builders & Devs., LLC, No. 17-CV-1415(JMA), 2017 WL 10456835, at *3 (E.D.N.Y. Dec. 14, 2017) (citing Dollar Phone Access, Inc. v. AT & T Inc., No. 14-CV-3240, 2015 WL 430286, at *4 (E.D.N.Y. Feb. 2, 2015).

Here the parties acknowledge that this Court is accorded broad discretion to dismiss this case on forum non conveniens grounds. (Pl.'s Opp. at 33-34.; Def.'s Mot. at 21-22.) Defendant argues that dismissal is warranted, because Plaintiff's factual allegations show that this action could have easily been brought in Florida, Demetech's residence and principle place of business. Plaintiff does not deny this point, but instead principally argues that because transfer would merely

shift the inconvenience from one party to the other, Defendant's request must be denied. The Court disagrees.

Notwithstanding the parties' sparse factual allegations, on the undisputed record before the Court, Defendant resides in the Southern District of Florida, and a substantial part of events or omissions giving rise to the claim occurred in Florida sufficient to satisfy 28 U.S.C. § 1391(a) and (b) and 28 U.S.C. § 1406(a). See Bartosiewicz, at *9 (W.D.N.Y. Sept. 29, 2021) (granting transfer where "despite [] limited briefing" defendant's place of residence and where a substantial part of events took place were "clear from the record."). Accordingly, the Court exercises its discretion to transfer this action to the Southern District of Florida.

### III. CONCLUSION

For the foregoing reasons, the Court finds that it cannot exercise personal jurisdiction over Defendant. The Court grants the Defendant's motion for transfer of venue and transfers this action to the Southern District of Florida.

**SO ORDERED.**

Dated: March 30, 2022
Central Islip, New York

                /s/    JMA
                JOAN M. AZRACK
                UNITED STATES DISTRICT JUDGE